**Opinion issued February 12, 2026.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-24-00778-CR

———————————

**JASON CIERRA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 149th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 99911-CR**

---

## MEMORANDUM OPINION

The jury found Appellant Jason Cierra guilty of murder and assessed his punishment at life imprisonment and a $10,000 fine. On appeal, Cierra argues that there is insufficient evidence supporting his conviction because none of the witnesses could have seen him murder the complainant by stabbing her in the chest.

We affirm the trial court's judgment.

## Background

Appellant Jason Cierra and his elderly father Gilbert Cierra lived in a small trailer owned by the complainant America Llamas. Llamas, Gilbert's ex-girlfriend, lived in a separate residence on the same property. Gilbert, who was in poor health, could not walk or get out of bed without assistance and relied on Cierra and Llamas to care for him.

On the morning Llamas was murdered, Gilbert blacked out and he fell to the floor when he tried to walk to the bathroom. Cierra asked Llamas to help him pick Gilbert up off the floor. Cierra's girlfriend, Stephanie Dollar, was on the phone with Cierra when Llamas arrived at the trailer. Dollar overheard Llamas and Cierra arguing, Llamas criticizing Cierra, and Gilbert telling them to shut up. Dollar called 9-1-1 for assistance when Cierra and Llamas were unable to help Gilbert onto the small couch. Llamas left the trailer, but she came back with her six-month-old grandson to cheer up Gilbert while they waited for EMS to arrive. According to Dollar, Llamas and Cierra started arguing again and Cierra put Dollar on the speaker phone. After Dollar told Llamas and Cierra to stop fighting and focus on Gilbert, Llamas apologized and said she was leaving.

According to Dollar, Cierra called Llamas a "bitch" and then Dollar heard "something hit the ground." Dollar did not know what was happening, but she heard

2

what sounded like "clapping" and Gilbert wailing and yelling "Jason, no." When Dollar asked Cierra what had happened, he told her that he "fucked [Llamas] up." Cierra drove off, but he stopped at a nearby convenience store because his car was out of gas. He called Dollar again from the store, and when she asked him what happened, Cierra told Dollar that he "stabbed her."

At Dollar's suggestion, Cierra called 9-1-1 to turn himself in to the police. Cierra gave the 9-1-1 operator his full name and he told her that he had "killed that lady," whom he identified as "America Llamas," and he wanted to turn himself in. Cierra, who had red stains on his clothes, told the store cashier that he "called the cops because he had just killed somebody." Forensic testing later confirmed that there was blood on Cierra's clothes and shoes and on the steering wheel and driver's seat of his car.

After Cierra drove away, Gilbert called Llamas' daughter Monica and told her that Cierra had killed Llamas. Monica, who was at Llamas' house when she received Gilbert's call, ran over to the trailer where she saw Llamas lying on the floor with a knife in her chest. Although the paramedics who responded to Dollar's call for assistance were already at the scene, they waited for the police to arrive before entering the trailer because Llamas' body was blocking the doorway. According to a responding officer, Gilbert could not walk, and "he did not move the entire time we were there."

While in jail awaiting trial, Cierra told his cousin that Dollar broke up with him "because I beat [Llamas] up and then killed her. So, she already knew I killed her because I told her."

**Sufficiency of Evidence**

In his sole issue, Cierra argues that the evidence is legally insufficient to support his murder conviction because none of the witnesses could identify him as the person who stabbed Llamas.

**A.      Standard of Review**

We apply the legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979) in determining whether the evidence is sufficient to support each element of a criminal offense that the state must prove beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). When conducting our sufficiency review, we examine all evidence in the light most favorable to the jury's verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "the standard of review on appeal is the same for both direct and circumstantial evidence cases." *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (stating

"circumstantial evidence alone can be sufficient to establish guilt"). The testimony of a sole witness to an offense may constitute sufficient evidence to support a conviction. *See Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971) (upholding conviction for assault with intent to murder where only one witness saw defendant with gun); *Davis v. State*, 177 S.W.3d 355, 359 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("It is well established that a conviction may be based on the testimony of a single eyewitness.").

The trier of fact is the sole judge of the weight and credibility of the evidence. *See Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018). We thus defer to the jury to fairly "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. A reviewing court, faced with a record of historical facts supporting conflicting inferences, must presume the factfinder resolved any such conflict in favor of the prosecution, and must defer to that resolution. *Id.* at 326.

As charged in the indictment, a person commits murder if he "intentionally or knowingly causes the death of an individual." TEX. PENAL CODE § 19.02(b)(1).

## B. Analysis

Cierra argues that the evidence is legally insufficient to support his murder conviction because none of the witnesses could identify him as the person who

stabbed Llamas.[1] According to Cierra, the evidence reflects that the only potential eyewitness, Gilbert, could not have seen him stab Llamas because his view was obstructed and Dollar, who was on the phone with Cierra when Llamas was stabbed, could not have seen anything that transpired in the trailer and she "only heard things [while on the call] that she clearly speculated upon."

Gilbert unequivocally testified at trial multiple times—on direct, cross, and redirect examination—that he saw Cierra stab Llamas.[2] According to Gilbert, Dollar called 9-1-1 for assistance because Cierra and Llamas were unable to help him off the floor. Gilbert testified that Cierra hit Llamas, and she tried to run away, but Cierra grabbed her hair and pulled her back inside the trailer. According to Gilbert, Cierra got on top of Llamas and started hitting her and punching her in the face and then Cierra grabbed a large knife from a kitchen drawer and plunged the knife into Llamas' chest.

When asked on cross-examination if he saw Cierra "actually put a knife into America," Gilbert stated, "Yes, I did, sir." After showing Gilbert a series of photographs showing Gilbert sitting on a small couch and a chest of drawers between the couch and Llamas' body, Cierra's counsel asked Gilbert twice how he was able

---

[1]     Cierra does not dispute that someone intentionally or knowingly caused Llamas' death by stabbing her in the chest. Rather, his sufficiency challenge is limited to the evidence establishing his identity as the perpetrator.

[2]     A transcript of Gilbert's videotaped deposition was admitted into evidence, and the video was played for the jury.

to see Cierra stab Llamas with the chest of drawers obstructing his view. Gilbert testified that he did not know how he was able to see them, but he knew that he saw Cierra and Llamas. When asked if it was possible that he just heard what was happening and did not see Cierra, Gilbert reiterated twice that he knew he saw Cierra. On redirect examination, Gilbert testified that he did not know how he ended up on the couch, but he was on the floor when he saw Cierra attack Llamas.

Gilbert's testimony that he witnessed Cierra stab Llamas is sufficient, standing alone, to support the jury's finding that Cierra is the person who killed Llamas by stabbing her in the chest. *See Aguilar*, 468 S.W.2d at 77 (upholding conviction for assault with intent to murder where only one witness saw defendant with gun); *Davis*, 177 S.W.3d at 359 ("It is well established that a conviction may be based on the testimony of a single eyewitness.").

Cierra argues that the jury could not have credited Gilbert's testimony that he witnessed Cierra stab Llamas because the evidence demonstrates that Gilbert's view was obstructed. In other words, Cierra argues that Gilbert's testimony is not credible. To the extent there is evidence that undermines or raises questions about the veracity of Gilbert's testimony, including whether Gilbert's view was obstructed by the chest of drawers, it was the jury's province to resolve any conflicts in the evidence and assess Gilbert's credibility, and we defer to the jury's resolution of these issues. *See Zuniga*, 551 S.W.3d at 733 (stating factfinder is sole judge of witness credibility and

7

weight of evidence); *see also Jackson*, 443 U.S. at 319 (stating appellate courts defer to factfinder to fairly "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").

Although Cierra's sufficiency argument focuses on Gilbert's testimony, other evidence admitted at trial supports the jury's finding that Cierra stabbed Llamas, including Cierra's multiple extrajudicial confessions and circumstantial evidence. It is undisputed that Cierra fled the scene immediately after Llamas was stabbed and he drove to a convenience store and called Dollar. When Dollar asked him what happened, Cierra told her that he "stabbed her." Cierra gave the 9-1-1 operator his full name and he told her that he had killed "America Llamas," and he wanted to turn himself in. Cierra also told the store's cashier that "he had called the cops because he had just killed somebody." Several months later, during a recorded phone call from jail, Cierra told his cousin that he had told Dollar that he killed Llamas. Although Cierra's extrajudicial confessions, standing alone, do not constitute legally sufficient evidence that he committed murder, they are sufficient to establish that he is the person who stabbed Llamas. *See Miranda v. State*, 620 S.W.3d 923, 928 (Tex. Crim. App. 2021) ("When a conviction is based on a defendant's extrajudicial confession, that confession does not constitute legally sufficient evidence of guilt without corroborating evidence independent of that confession showing that the 'essential nature' of the offense was committed.") (quoting *Miller v. State*, 457

8

S.W.3d 919, 924 (Tex. Crim. App. 2015)); *Ward v. State*, No. 01-17-00246-CR, 2018 WL 1914924, at \*6 (Tex. App.—Houston [1st Dist.] Apr. 24, 2018, no pet.) (mem. op.) ("An extrajudicial confession is sufficient to establish the identity of the perpetrator of a crime.") (citing *Emery v. State*, 881 S.W.2d 702, 706 (Tex. Crim. App. 1994)).

In addition to Cierra's multiple confessions and Gilbert's eyewitness testimony, there is circumstantial evidence from which the jury could have reasonably inferred that Cierra was the perpetrator. It is undisputed that Llamas was stabbed in the chest with a knife inside the trailer, that Cierra, Gilbert, and Llamas were the only adults in the trailer when Llamas was stabbed, and that Gilbert was unable to move without assistance. It is also undisputed that Cierra fled the scene immediately after Llamas was killed, that Gilbert told Monica after Cierra left that Cierra had killed Llamas, and that there was blood on Cierra's shoes and clothes and on the steering wheel and driver's seat of his car. *See Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009) (stating eyewitness testimony not required to support conviction because "State can prove the defendant's identity and culpability by circumstantial evidence, together with all reasonable inferences from that evidence"); *see also Robinson v. State*, 236 S.W.3d 260, 267 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) ("Evidence of flight is . . . admissible as a circumstance from which an inference of guilt can be drawn."). This evidence also corroborates

Cierra's confessions of guilt. *See Miranda*, 620 S.W.3d at 928 (holding extrajudicial confession constitutes legally sufficient evidence of guilt when accompanied by "corroborating evidence independent of that confession showing that the 'essential nature' of the offense was committed") (quoting *Miller*, 457 S.W.3d at 924).

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have determined beyond a reasonable doubt that Cierra intentionally or knowingly caused Llamas' death by stabbing her with a knife. *See Jackson* at 319. We thus hold there is legally sufficient evidence supporting Cierra's murder conviction. *See id.*

We overrule Cierra's sole issue.

## Conclusion

We affirm the trial court's judgment.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Rivas-Molloy, Guiney, and Morgan.

Do not Publish. Tᴇx. R. Aᴘᴘ. P. 47.2(b).